**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:14-cv-03317-KMT

TYSON KOPP,

Plaintiff,

v.

JOHN SCARFF HORNUNG,
MILBA JEAN HORNUNG, and
MCA MANAGEMENT COMPANY, a
Missouri corporation,

Defendants,

---

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(2) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56**

COME NOW the Defendants, MCA Management Company ("MCA"), John Scarf Hornung, and Melba[1] Jean Hornung (collectively, "Defendants"), by and through their counsel of record, Steven J. Wienczkowski, and for their Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2)(this "Motion"), state as follows:

### Certificate of Conferral Pursuant to D.C.COLO.LR 7.1.(a)

While technically not required, the undersigned certifies that he conferred with counsel for Plaintiff regarding the jurisdictional defects of this lawsuit, and the fact that Plaintiff released all claims that are the basis of Plaintiff's lawsuit. Plaintiff has not agreed to dismiss this lawsuit.

### I.   INTRODUCTION

In the Complaint, Plaintiff asserts that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") and the Fair Credit Reporting Act, 15

---

[1] Plaintiff incorrectly identified Mrs. Hornung as "Milba" in the Complaint.

U.S.C. § 1681 *et seq.* (the "FCRA") relating to MCA's attempt to collect a debt owed to Western Anesthesiology (MCA's account number 807699).  *See* Doc. No. 1, ¶¶ 10-11, 30-35; Doc. No. 1-1.  Specifically, Plaintiff alleges that he disputed the debt via letter on or about October 24, 2013, and that, in spite of this dispute, MCA subsequently reported Plaintiff's debt to Transunion without reporting the account as disputed.  *Id.*, ¶¶ 16-20.

Plaintiff contends that MCA is a Missouri corporation that "conducts business in Denver, Colorado."  *Id.*, ¶ 4.  Plaintiff contends that the individually-named Defendants are Missouri citizens, and the basis for their alleged liability stems from their role as "principals" in MCA. *Id.*, ¶¶ 2-3, 38-40.

As detailed below, MCA is a Missouri corporation that is in the business of collecting financial obligations. MCA does not transact any business in Colorado. MCA is not licensed as a Collection Agency in Colorado and does not purposefully direct any business activities to Colorado.  Further, MCA does not generate any revenue from any citizen located in Colorado. Additionally, the individually-named owners of MCA are elderly Missouri citizens who do not participate in the day-to-day activities of MCA and do not conduct any business in Colorado. As such, the Court does not have "general" jurisdiction over Defendants.

Further, with respect to the collection efforts undertaken by MCA (relating to Plaintiff's account for medical services Plaintiff received in Missouri), MCA sent a single collection letter to Plaintiff regarding the account, which was sent to a Missouri address.  The letter was not returned as undeliverable. It is clear that Plaintiff received the letter as it is attached as an exhibit to his Complaint.  *See* Doc. No. 1-1.   While MCA attempted to reach Plaintiff via telephone regarding the account, it was unable to identify a correct telephone number for Plaintiff. All telephone attempts to reach Plaintiff were placed to Missouri telephone numbers.  Further, MCA

2

never received a telephone call from a number identified with a Colorado area code.  As neither MCA nor the individually-named Defendants purposefully availed themselves to Colorado relating to Plaintiff's account with MCA, "specific" jurisdiction in this case is lacking.

Accordingly, as Plaintiff cannot establish either "general" or "specific" jurisdiction over Defendants in this case, it must be dismissed pursuant to Fed.R.Civ.P. 12(b)(2).

Further, and in the alternative, in the event the Court finds that personal jurisdiction is established, Defendants are entitled to judgment as a matter of law because Plaintiff previously released all claims that are the basis of the Complaint.

## II.      FED. R. CIV. P. 12(b)(2) STANDARDS

Fed.R.Civ.P. 12(b)(2) provides for the dismissal of an action due to lack of personal jurisdiction.  A plaintiff bears the burden of establishing the existence of personal jurisdiction. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.,* 205 F. 3d 1244, 1247 (10th Cir. 2000).  The Court may consider matters outside the Complaint because, "[u]nlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), a motion to dismiss under Rule 12(b)(2) is a test of the plaintiff's actual proof...." *Shaw v. American Cyanamide Co.,* 534 F. Supp. 527, 528 (D. Conn. 1982).   In addition, motions to dismiss under Rule 12(b)(2) may test the plaintiff's theory supporting personal jurisdiction, the factual basis underlying the plaintiff's theory, or both. *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153-54 (2nd Cir. 1999)(citation omitted).  If the jurisdictional facts alleged by the plaintiff are challenged, the plaintiff must support jurisdictional allegations contained in the complaint with competent proof. *Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, 1376 (10th Cir. 1989)(citing *Becker v. Angle,* 165 F.2d 140, 141 (10th Cir. 1947)).

Personal jurisdiction over an out-of-state defendant must be consistent with Colorado's so-called "long-arm statute" (C.R.S. § 13-1-124), and must not violate the due process clause of the Fourteenth Amendment. *Ensign v. B&H Rig and Tong Sales*, 2013 U.S. Dist. LEXIS 89903, *4 (D. Colo. June 26, 2013)(citing *Benton v. Cameco Corp.,* 375 F.3d 1070, 1074-75 (10th Cir. 2004)). Because Colorado's long arm statute "….has been construed to extend jurisdiction to the full extent of the Constitution….," the relevant inquiry is whether jurisdiction is consistent with due process. *Ensign*, 2013 U.S. Dist. LEXIS at *4 (citing *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Classic Auto Sales, Inc. v. Schocket,* 832 P.2d 233, 235 (Colo.1992); and *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1193 (Colo. 2005)).

In order to satisfy due process for personal jurisdictional purposes, a defendant must have "….sufficient 'minimum contacts' with the forum state to suffice such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Norsyn, Inc. v. Bank of India,* 2007 U.S. Dist. LEXIS 19212, *6-7 (D. Colo. Mar. 19, 2007)(quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  Therefore, the analysis of personal jurisdiction boils down to a two-step analysis:

> At the first step, we examine "whether the non-resident defendant has 'minimum contacts' with the forum state such that he should reasonably anticipate being haled into court there"…..If the defendant has sufficient contacts, we then proceed to the second step. At this step, "we ask whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is 'reasonable' under the circumstances.

*Melea, Ltd v. Jawer Sa,* 511 F.3d 1060, 1065-66 (10th Cir. 2007)(citations omitted).

The test for sufficient "minimum contacts" evaluates: "….whether the defendant has ***purposefully*** directed its activities at residents of the forum state, whether the claims asserted arise out of that purposeful direction of activity, and whether the assertion of jurisdiction under

the circumstances is reasonable and fair." *Norsyn,* 2007 U.S. Dist. LEXIS at *7 (emphasis added)(citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1532-33 (10th Cir. 1996)).

As emphasized by the U.S. Supreme Court in *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)*,* "….it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the protection of its laws."  This requirement "…ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts….or of the 'unilateral activity of another party or a third person.'*" Burger King,* 471 U.S. at 575 (quoting and citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299 (1980); and *Helicopteros Nationales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417 (1984)).

Minimum contacts can be broken down into either "general" or "specific" personal jurisdiction.  The distinction, described in *Dietz v. Dietz*, 2012 U.S. Dist. LEXIS 73675 (D. Colo. May 29, 2012), is:

> "General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state, and does not require that the claim be related to those contacts." *Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011)* (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008)).* The minimum contacts test for specific jurisdiction requires "first, that the out-of-state defendants must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities."

*Id.,* at *6.

As noted, if the requisite minimum contacts with the forum state are established, the Court must then determine whether exercising jurisdiction comports with "traditional notions of fair play and substantial justice." *Melea, Ltd.,* at 1065-66.   This inquiry "...requires a determination of whether the Court's exercise of personal jurisdiction over [the defendant] is 'reasonable' in light of the circumstances of the case." *Medved v. Deatley*, 2013 U.S. Dist. LEXIS 129792, *10-11 (D. Colo. Sept. 11, 2013)(citing *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113 (1987)).  In this regard, consideration is generally given to:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Medved*, 2013 U.S. Dist. LEXIS at *18 (citing *OMI Holdings v. Royal Ins. of Can.*, 149 F.3d 1086, 1095 (10th Cir. 1998)).

## III.   ARGUMENT

### A.   Plaintiff Cannot Establish "General" Jurisdiction.

In this case, "general" jurisdiction is lacking. Attached hereto as ***Exhibit A*** is the affidavit of Julie Repa, the Compliance Manager for MCA.  As set forth in Ms. Repa's affidavit, MCA is a Missouri corporation that is in the business of collecting financial obligations. ***Exhibit A,*** *Affidavit of J. Repa*, ¶ 2.  MCA does not collect in Colorado and is not licensed as a Collection Agency in Colorado.  *Id.*, ¶¶ 2, 4.   MCA does not conduct any business in Colorado and does not generate any revenue from any Colorado residents. *Id.*, ¶ 6.  Therefore, Plaintiff's contention that MCA "conducts business in Denver, Colorado" (Complaint, ¶ 4) is erroneous.

Further, Mr. and Mrs. Hornung, who were named individually in this lawsuit, are the elderly owners of MCA who do not participate in the day-to-day activities of MCA, and did not

participate in any way in the attempts to collect Plaintiff's account. *Exhibit A*, ¶¶ 23-26.  The Hornungs are Missouri residents and do not conduct any business in Colorado. *Id.*, ¶ 27.

Therefore, because the Defendants do not have "continuous and systematic" contact with Colorado, "general" jurisdiction principles cannot be invoked. *See, Dietz*, 2012 U.S. Dist. LEXIS at *6.

### B.  Plaintiff Cannot Establish "Specific" Jurisdiction.

The collection efforts on the part of MCA to collect Plaintiff's account were extremely minimal, and all directed to Plaintiff based upon his Missouri address.  MCA sent a single letter to Plaintiff which was addressed to a Missouri P.O. Box. *See Exhibit A*, ¶ 15; *Exhibit C; Doc. No. 1-1.*  The address information was provided by the original creditor, and in the event a creditor sends MCA an account that is associated with a consumer who resides in a state wherein MCA does not collect, the account is automatically blocked such that no collection activity will occur on the account. *Exhibit A*, ¶¶ 16-17.  The letter that was sent to Plaintiff was not returned as undeliverable, and it is clear that Plaintiff received the letter as he attached the letter to his Complaint. *See Exhibit A,* ¶ 15; Doc. No. *1-1.*  After MCA received a letter from Plaintiff on or about October 29, 2013 stating, *inter alia,* that he "disputed" the account, MCA reported the account as "disputed" on its next credit reporting cycle.  *Exhibit A*, ¶¶ 18-19; *Exhibit D*, *Computer Screen Printout.*  Plaintiff's account was then closed, and no additional attempts to collect upon the account were made. *Exhibit A,* ¶ 21.  At no time did MCA obtain or review Plaintiff's credit report.  *Id.,* ¶ 20.  At no time did Defendants attempt to collect from Plaintiff in Colorado. *Id.*, ¶ 22, 25-26.   Therefore, there is simply no basis to find that Defendants "purposefully" directed any collection activities in the State of Colorado.

**C.  Exercising Jurisdiction in this Case would be Unreasonable.**

Even assuming, *arguendo,* this Court were to find that Defendants purposefully directed its collection activities to the State of Colorado, the Court must then determine whether exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Melea, Ltd.,* at 1065-66. Consideration of the factors discussed in *Medved*, *supra,* strongly weigh against a finding that exercising jurisdiction would be reasonable under the circumstances.

First, the burden placed upon Defendants in having to defend against a claim in Colorado is significant. Because MCA does not collect in Colorado, it has been forced to retain counsel in state where MCA does not regularly defend itself.  Further, as the Defendants are all located in Missouri, it would be burdensome to force the individually-named Defendants and MCA employees to fly out to Colorado to defend these claims when MCA has made the deliberate choice not to collect in Colorado.  While Plaintiff may argue it is at least equally burdensome for him to have to travel to Missouri to prosecute his case, it is important to keep in mind that even if the relative inconvenience of the parties are equal, "…the law of personal jurisdiction, however, is asymmetrical.  The primary concern is for the burden on defendant." *Insurance Co. of N. America v. Marina Salina Cruz,* 649 F.2d 1266, 1272 (9th Cir. 1981)(citing *World-Wide Volkswagen*, 444 U.S. at 292).

Second, Colorado's interest in resolving this dispute is minimal.  Again, MCA has chosen not to collect in Colorado and is not licensed with the State.  Therefore, Colorado has little interest in regulating the conduct of a collection agency which has chosen not to collect in this State. While Colorado certainly has an interest in making sure its citizens have a forum to resolve their disputes, because Plaintiff has alleged violations of the FDCPA, subject matter jurisdiction can be invoked in any federal or state court in the country.  There is no significant

reason for the case to be tried here rather than a more appropriate forum, such as Missouri, where Plaintiff resided at least for some period of time, where all collection activities were directed, and where all of Defendants' witnesses reside.

Third, with respect to Plaintiff's interest in receiving convenient and effective relief, again, as Plaintiff has alleged federal statutory violations, there is nothing prohibiting Plaintiff from bringing her claims in a different court where personal jurisdiction over the Defendants would be appropriate. While Plaintiff has retained counsel in this matter, there is certainly no shortage of consumer law attorneys bringing these types of claims across the country, including Missouri.

The fourth factor the Court is to consider is "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Medved,* 2013 U.S. Dist. LEXIS at *18 The focus for this area of inquiry is: the location of witnesses, where the alleged wrong occurred, what state's substantive law governs, and whether exercising jurisdiction prevents piecemeal litigation. *OMI Holdings,* 149 F. 3d at 1097.  It is likely that MCA will have more than one witness to present in the defense of this case (such as the Rule 30(b)(6) witness and the collector witnesses who worked on the account), and will have to bring all of those witnesses to Colorado to defend this case if it goes to trial. This could result in a considerable expense for MCA. In addition, the alleged wrong occurred in Missouri where all collection activity took place.  With respect to the governing substantive law, again, Plaintiff has asserted federal statutory claims, which can be adjudicated in any federal or state court.  Finally, there is no risk of piecemeal litigation if the Court finds personal jurisdiction is improper.

The final factor to consider regarding the "reasonableness" of asserting personal jurisdiction is "the shared interest of the several states in furthering fundamental substantive

social policies." *Medved*, 2013 U.S. Dist. LEXIS at *18.  This factor focuses on "whether the exercise of personal jurisdiction by [Colorado] affects the substantive social policy interests of other states or foreign nations." *Omni Holdings,* 149 F. 3d at 1097. (citation omitted). Defendants submit that this factor is essentially neutral because Plaintiff has not alleged any state law claims.

Accordingly, even if, *arguendo,* the Court were to find that Defendants purposefully availed themselves of this jurisdiction, a balance of all of the factors related to "traditional notions of fair play and substantial justice," weigh strongly in favor of declining to find personal jurisdiction in this case. As personal jurisdiction cannot be established by Plaintiff in this case, it must be dismissed pursuant to Fed.R.Civ.P. 12(b)(2).

### IV.        PLAINTIFF RELEASED ALL CLAIMS THAT ARE THE SUBJECT OF THIS LAWSUIT

Defendants submit that this case should be dismissed for lack of personal jurisdiction. If the Court agrees with Defendants, no further inquiry into the merits of Plaintiff's case is required or would be appropriate.  However, in the event the Court were to find that personal jurisdiction is established, Defendants are entitled to a judgment as a matter of law due to Plaintiff's release of all claims which are the subject of this lawsuit.  Defendants understand that a motion for summary judgment is typically filed after some discovery is exchanged between the parties. However, Defendants believe Plaintiff's release of claims against Defendants can (and should) be addressed at the outset of this case prior to the parties incurring substantial attorneys' fees, but only *if* the Court finds that personal jurisdiction is established.

Summary judgment under Fed.R.Civ.P. 56 is appropriate when "…the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying the standard, the Court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield v. Farm Credit Bank*, 226 F. 3d 1138, 1148 (10th Cir. 2000)(quoting *Martin v. Kansas,* 190 F.3d 1120, 1129 (10th Cir. 1999)). However, under Rule 56, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary Judgment under Rule 56 is regarded "as an integral part of the Federal Rules" and is designed "'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp.,* 477 U.S. at 327. Thus, Rule 56 must be construed with due regard not only for the rights of persons asserting claims that are adequately based in fact, but also for the rights of entities opposing such claims to demonstrate prior to trial that the claims have no basis. *Id.* No longer may a plaintiff avoid summary judgment by presenting a "merely colorable" claim or "a scintilla" of evidence. *See*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-251. Rather, in the face of a properly supported motion for summary judgment, Plaintiff must offer significant probative evidence tending to support the complaint. *Id*. at 256.

Importantly, when a party signs a release of claims that covers the same issues raised in an action, summary judgment on behalf of the defendant is appropriate. *See Banca Commerciale Italiana, New York Branch v. Northern Trust Int'l Banking Corp.*, 160 F.3d 90, 95 (2nd Cir. 1998). In general, a release that is signed pursuant to a settlement, "'must be given effect according to its terms…' and claims that are covered by a release "'cannot be judicially entertained unless the release itself is found to be defective.'" *Melong v. Micronesian Claim*

11

*Com.,* 643 F.2d 10, 16 (D.C. Cir. 1980 )(quoting *Rexrode v. Vinson,* 131 U.S. App. D.C. 252, 404 F.2d 830, 831 (D.C. Cir. 1968) and *Urbanizadora Santa Clara, S.A., v. United States,* 518 F.2d 574, 578, 207 Ct.Cl. 297 (1975)).   A valid release will operate "immediately to extinguish all causes of action that fall within the scope of the release." *Averty v. Northern Telecom, Inc.,* 1995 U.S. App. LEXIS 35724, (10th Cir. Dec. 19, 1995)(unpublished)(citing *Kreutzmann v. Bauman,* 609 S.W.2d 736, 736-39 (Tenn. Ct. App. 1980)).   Releases are considered to be contractual provisions and "should be interpreted according to well-developed contract interpretation." *Harte v. Cannon Law Assoc.,* 2013 U.S. Dist. LEXIS 150309, *4-5 (D. Utah Oct. 18, 2013).   The Court is to apply state law in determining issues related to a settlement agreement.   *United States v. McCall,* 235 F.3d 1211, 1215 (10th Cir. 2000)(citing *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996)).    In entering into a contract, the intent of the parties is determined by looking to the plain language of the agreement "and we will enforce the agreement as written unless there is an ambiguity in the language."   *Allen v. Pacheco,* 71 P.3d 375, 378 (Colo. 2003).    The scope of an agreement is determined by the language of the document itself.   *Cingoranelli v. St. Paul Fire & Marine Ins. Co.,* 658 P.2d 863 (Colo. 1983).

It is undisputed that, as part of a settlement agreement between the parties, Plaintiff tendered the release attached as **Exhibit E** (hereinafter the "Release").   As set forth in the Release, which is dated July 22, 2014, Plaintiff released and "forever discharge[d]":

> MCA Management Company, their clients, heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever as of the date of the signing of this release, and particularly on account of all damages, known and unknown, which have resulted from:
> The collection of a debt for Western Anesthesiology Assoc., MCA's account number 807699.

*Exhibit E.*[2]

Plaintiff's claims in this case relate to MCA's attempt to collect the Western Anesthesiology account, which was specifically referenced in Plaintiff's Release. *See Complaint,* Doc. No. 1, ¶¶ 11, 14-36; Doc. No. 1-1.  The Release is clear and unambiguous with respect to the scope of the parties to be released, which includes MCA as well as "all other persons….who might be claimed to be liable," which certainly includes the individually named owners of MCA.

Accordingly, in the event the Court were to find that personal jurisdiction is established, Defendants are entitled to judgment as a matter of law due to Plaintiff's release of the claims which are the basis of this lawsuit.

## V.        CONCLUSION

Plaintiff cannot establish "general" jurisdiction as neither MCA, nor the individually-named owners of MCA, conduct any business in Colorado such that their contact would be considered "continuous and systematic."   Importantly, MCA is not licensed as a collection agency in Colorado and does not collect in Colorado.  Plaintiff also cannot establish "specific" jurisdiction, as MCA did not purposefully direct any of its collection activities to Colorado in an attempt to collect from Plaintiff. MCA did not place any telephone calls to Colorado and did not receive any calls from Colorado in its efforts to collect from Plaintiff. The only letter that was sent to Plaintiff was sent to a Missouri address, and was not returned as undeliverable. Accordingly, this case should be dismissed for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).

In the event the Court were to determine that personal jurisdiction is established,

---

[2] To the extent the Court deems it relevant, after Plaintiff's counsel tendered the Release, Plaintiff's counsel refused to provide tax identification information so that the insurance carrier could process the settlement check.

13

judgment should enter in favor of Defendants as it is undisputed that Plaintiff released all of the claims which are the subject of this lawsuit.

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff's Complaint for lack of personal jurisdiction.  In the alternative, and in the event the Court finds that Plaintiff has established personal jurisdiction, Defendant respectfully requests that the Court enter judgment in favor of Defendants based upon the Release signed by Plaintiff.  In addition, Defendants seek their reasonable costs and attorneys' fees in this case, and for such additional relief as this Court deems appropriate.

Respectfully submitted this 23rd day of January, 2015.

ADAM L. PLOTKIN, P.C.

By:     /s/ Steven J. Wienczkowski
        Steven J. Wienczkowski, Esq.
        621 Seventeenth Street, Suite 1800
        Denver, Colorado 80293
        Telephone: (303) 302-6864
        FAX: (303) 296-3544
        E-mail: swienczkowski@alp-pc.com
        Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

andrewg.legal@gmail.com

By:         /s/ Steven J. Wienczkowski
            _____
            Steven J. Wienczkowski, Esq.

14